Tonight is Prison vs. Secretary Departments. The District Court erred in dismissing Mr. Pearson's Section 1983 claims as time-barred, and in concluding that the statute of limitations applicable to those claims should not be told during the period Mr. Pearson was pursuing. But what's your best case for tolling, for equitable tolling in the federal side? Oh, for equitable tolling, Your Honor? I would say that's the case. Are you talking about equitable tolling? No, no, no. As an initial matter, I would say one looks to Pennsylvania law and their statutory tolling under Pennsylvania law. Because of the statutory prohibition as the Seventh Circuit found? No, Your Honor. And for that, I would point to Johnson v. Rivera, the Seventh Circuit decision. And that statute's almost identical. It is identical. There are slight differences, but it's nearly identical. It contains the same statutory prohibition language, the same stay language. What was the reasoning here? It was a magistrate judge saying because there was no stay imposed? He found that the PLRA did not constitute a statutory prohibition. He didn't focus on the stay language. But as the defendants have characterized it, he found that the PLRA was too porous and limited to qualify as a statutory prohibition. And I would suggest that that's not the case. In fact, there's no dispute that Mr. Pearson, as a prisoner in a correctional facility, is subject to the exhaustion requirement in the PLRA. And could not. I mean, was prohibited. Certainly he would be prohibited from filing suit by statute until he had exhausted all of the available administrative rights. In the event that we reverse the lower court, how should we direct the district court to proceed? Yes, Your Honor. I would suggest that at this point there's not sufficient evidence in the record or facts alleged in the record to determine the period of tolling. So as in the case of Lake v. Arnold, the proper course would be to remand to the district court to determine whether the facts support tolling and what the period of tolling would be. And I think that's consistent with Lake v. Arnold, as well as what was done in Oshaver v. Levin, and in the more recent case of the State of Miller. In each case, there was uncertainty as to the facts with respect to tolling, and a remand was given to the district court to determine those facts. But in terms of Judge McKee's question with respect to the best case for federal equitable tolling, I would suggest that that is Gonzales v. Hastie, which is the Second Circuit case that explicitly rested on equitable tolling, and did so for two reasons. Because of the procedural catch-22 that's created by the interaction between the state statute of limitations here and the exhaustion requirement that a litigant would be forced to, one, either risk his claim becoming untimely because he's exhausting administrative remedies, or wait, exhaust administrative remedies, or file suit and then risk dismissal because he's exhausted. And then, two, because of the potential perverse incentives for prison officials, that in considering administrative grievances, there may be a risk that they'll stretch out the grievance process to prevent litigants from filing suit or to foreclose judicial review altogether. But Johnson really does answer the question. You're right, under Johnson, if he were to file it, given the similarity of the Illinois statute and the Pennsylvania statute, you don't even have to get into the whole issue of the federal side of it. Yes, Your Honor. I completely agree. And I think that this circuit's case law does support, as an initial matter, looking to the state statutory and state principles of tolling. Do you also contend that the timely 1983 action or claim was improperly dismissed? That's correct, Your Honor. And yet I don't see the temporal proximity does not appear to be there. Even if you're relying on grievances, the last grievance was probably a year before the action was taken. Is that not correct? It's true, Your Honor, that there was a significant length of time that had passed. However, that's not dispositive. In Woodson, for instance, which was an employment retaliation case, there was a two-year period that had passed. But there was antagonism in the meantime. Here we have nothing, do we? That did rest in the finding of a pattern of antagonism. And this circuit's case law says you should look to the entire facts alleged. You're talking as fast as the weather people talk. I am so sorry, Your Honor. And I would suggest here that there are sufficient allegations when you look at all of the factual allegations to support. Well, let's go into that. Has he pled sufficient facts to state a claim with respect to his termination from the block worker position, which I guess is the main thing that he alleges? I mean, because he can't do much with moving or searching his cell. Rude language, I think, one of them. The 2007 allegation, I think, was that he was spoken to rudely. What happened in 08 that would support the pattern of antagonism? Because it was October of 08 that he was terminated. Yes, Judge McKee. Sorry. Excuse me, Judge Rendell. There, what I. She has glasses, too. Yes, I know. Very, very similar. So much alike. I think looking directly at the time of his termination as block worker. Isn't that the main thing that you can rely on? Isn't that the main allegation? With that particular claim, there's no dispute as to whether or not it's timely. I would also submit that with the tolling issue, his other two claims. Would come back. Would come back in. But with respect to the third claim, which is his termination as block worker, and the First Amendment retaliation claim there, I think it's the fact that, one, he alleges this two-year period where he was prevented from holding a job. So that starts with the period where he's filing these grievances. He's terminated in retaliation for filing grievances from his job in the dietary department. Then he's prevented from holding a job for approximately two years. He finally obtains a job as block worker. And he alleges that Defendant Carl finds out about this, becomes visibly upset, says Mr. Pearson is not supposed to get a job on the unit. And then he's terminated the next day. Mr. Pearson says he attempted to file a grievance about this. And it's removed from the bail box. But between the last grievance of September of 07 and October of 08 when he's fired, we don't have an allegation of a pattern of antagonism during that time, do we? I mean, antagonism would have to be shown by specific conduct directed toward him. I don't think that's the hearsay of another guard supposedly telling him why he was terminated. He does, yes. He also has Unit Manager Hunter, after he's terminated, saying the reason he's not being able to hold a job is because of the grievances. So I would say there is that direct statement as to the cause. Yeah, but is that evidence? Your Honor, I would say for purposes of at this point the motion to dismiss and drawing all the reasonable inferences in favor, particularly because he's a pro se litigant, that that would be sufficient, especially given the fact that he's alleging there's this two-year period. Well, it's probably not admissible. I don't believe ultimately if this proceeded on to trial that that would necessarily be admissible, but of course he would get discovery in the meantime and have a greater opportunity to develop the factual record. Yeah, it could be that he overheard something or maybe there are some facts that he could develop. Yes, but certainly the statement, at least for purposes of Rule 12B6, and given the fact that he is a pro se litigant, does support this inference that the reason that he's not able to hold a job and the reason that he's been terminated from the job that he was able to get is because of the grievances he had filed. If there are no further questions, I would be happy to reserve the remainder of my time for rebuttal. Okay, great. Thank you, Your Honor. All right, that's good. There's not this much time left. Good morning. Please report. My name is Kamal Alexander Marichli. I represent... What's your last name? Marichli. Okay. I represent the FLEs in this case. This is a weird case. Why in the world wouldn't the commonwealth want to encourage state inmates to exhaust administrative claims before rushing into federal court and filing a federal lawsuit? Is it just because... Which would be thrown out for failure to exhaust. Yeah. I was telling my colleagues this is a great go-to-march routine. Whatever it is, I'm against it. Is this just because you've got an inmate here bringing a claim, so you've got to be against it? Why wouldn't you want him to exhaust? I think that's a separate question from why we filed the motion to dismiss. But he's asking it. Yes, I understand. Of course we encourage exhaustion. The exhaustion requirement of the PLRA is essentially designed for the benefit of prison administrators and their clients. How is that not a statutory prohibition under Pennsylvania's tolling statute? When the Prison Litigation Reform Act says you shall not commence until you're prohibited. I understand. I've given that some careful thought, Your Honor. I hope so. Yes, I've had to. To mark this as an uphill battle is sort of saying climbing Everest is an uphill battle. I mean, I understood. Well, refreshing. If you'd examine our initial brief in this matter against Mr. Pearson and Pro Se, you will see that we collected all the authorities that my learned opponent has so ably presented in her brief to begin with. And I suppose that prompted the appointment of pro bono counsel in this case. So we have always been conscious of our duty to the court as officers of the court in this case. I mean, every non-presidential opinion of this court and every district court opinion has held that this exhaustion is required. I have the obligation, however, since we moved to dismiss the complaint in front of a well-regarded and honored district court judge and a magistrate judge, we, in fact, if we, in fact, led the court into error, we have an obligation to defend the position that we took. Chief Judge McKee tells the lawyers that they should answer our questions. My question is, how is it not a statutory prohibition? It is not a statutory prohibition, I suggest. Well, what is it then? It's not a statutory prohibition because it's our position, based on the analysis of the district court, that in order for it to be a statutory prohibition, it has to be far more comprehensive of actions under the Prison Litigation Reform Act than, in fact, it is. If, indeed, the prisoner is no longer incarcerated, there is no exhaustion requirement. Is he still incarcerated? This individual is. He's having two courts. Yes. This individual, in fact, does have an exhaustion requirement. But all individuals who sue under the Prison Litigation Reform Act do not have exhaustion requirements. Okay. So does that mean we have to say that because he doesn't have a requirement, nobody does? I mean, after all, we're writing. No, Your Honor. To answer your question, you have to say, I submit with all due respect, that it's not a statutory prohibition. It sure looks like it. As to him, as to this client, it is, though, isn't it? As to this client, it's not a statutory prohibition in the sense of the statute involving tolling under Pennsylvania law. As to this client, it's an exhaustion requirement. He does have, in fact, an exhaustion requirement. But the PLRA here sets up a statutory prohibition as to him. Well, my question to the court is, is it a statutory prohibition? The district court did not think it's a statutory prohibition in this particular case because although it sets up an exhaustion requirement as to him, which he must satisfy in order to bring this suit in federal court, the broader concept of the exhaustion requirement cannot be viewed as a statutory prohibition because it only applies to people in his situation. It doesn't apply to people who filed 1983 actions in state court. Well, except they've all been thrown out on this basis. By non-presidential decisions of the Commonwealth Court, there's a conflicting decision by Judge Leavitt. That's the only one. You've got one case sitting out there. All the other non-presidential opinions have said there is a statutory prohibition. The circuits have seemed to have gone that way. Well, there's a conflict as well, as I'm sure you understand, Chief Justice. I think it's based upon the language in the underlying state statute. And Ms. Collins, excuse me, ably argued that Johnson v. Rivera, which looked at a statute very, very similar to our statute. It's remarkably similar, yes. Yes, it is. But courts decide issues that are brought before them, and no one asked the Seventh Circuit whether or not it was a statutory prohibition. It was presumed that it was a statutory prohibition. It was assumed to be obvious that it was a statutory prohibition. Isn't it obvious? This one seems kind of obvious. It was not obvious to Magistrate Judge Pasto and Judge Gibson. They decided that it was not a statutory prohibition. And the reason they decided it was not a statutory prohibition. It is in the statute, right? Yes. And it is a prohibition. It's in the statute. That's the only reason it would ever be logical. It's a prohibition. It's really maddening when she gets logical like that. It is a statute, and it is a prohibition, but it's not a statutory prohibition. And the reason it's not a statutory prohibition, if you accept the reasoning of the district court, is that it's not comprehensive to all plaintiffs who are suing under the Prison Litigation Reform Act under all circumstances. And that's made obvious not only in my brief, but in the opinion in Van Tassel and the opinion in this case that United States Magistrate Judge Pasto and Judge Gibson have set forth. In this case and Van Tassel, that's it. And there are a number of cases which seem to be consistent with the logic. I just accused Judge Silver of being logical. There are a lot of cases out there. I'll take that. Well, you know what's interesting? The actual Pennsylvania tolling provision speaks to an analysis on a case-by-case basis. It says where the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, and here you look and you say, oh, okay, his commencement of a civil action has been stayed. It doesn't say, it doesn't have the broad, it has to be, you know, applied to everything. This statute has you look to each individual situation and determine whether there's tolling. Does it not? Perhaps then may I suggest as an officer of the court that this case gives you the opportunity to explain why it is a statutory prohibition, which was never explained in Johnson v. Rivera. And they provided the opportunity to... I'm going to get 5535B and explain what it means. Exactly, Your Honor, because, frankly, the mischief in this case may come from the fact that Johnson v. Rivera does not explain, does not, as the nuns told me in grade school, show your work. They did not demonstrate how they came to that conclusion. And lawyers, being what they are, will find whatever solace they can find in whatever bare and barren ground they may find it. In this particular ground, if I may move briefly to the other issue. Yes, the 1983 claim. Yes. There is, in fact, I think, on the face of the allegations of Mr. Pearson's complaint, viewed in the light most favorable to Mr. Pearson. We have to assume they're true. Yes, and we do. And it's supposed to be a complaint. And my able opponent has pointed out paragraphs 64, 66, and 67 of the amended complaint, specifically as providing the basis for the allegations. And it seems to me he was fired on October 20th of 2008. And the only itemized instance of antagonism from September of 2007, which I suggest is too far away, too attenuated, too removed, that otherwise occurred is in paragraph 66. And it's a Sergeant Clippinger. And this Sergeant Clippinger was rude to him, very rude to him. But he wasn't even rude to him about the job. He was rude to him in general. What happened was Clippinger was talking to another inmate. And he managed to see he saw Pearson, shall we say, out of the corner of his eye. And he said, you know, I'm not impressed by people filing grievances and giving me trouble. Like this Pearson here, he's created a lot of trouble. He's filed a lot of grievances. It means nothing to me. And Pearson apparently said, why are you bringing me up? I'm not talking to you. And you're not talking to me. You're talking to this other guy, and you're bringing me up. And Clippinger says, I'm not afraid of you. You think you're tough? You're not tough. You can file grievances, and I'm not going to pay attention to them. Now, that's what happened. You know, yesterday we were looking for actors to play certain roles in a case we had. And I suggested Danny DeVito play Mr. Zosmer. I think the way you just went through those lanes, you could play Bob Zosmer. For a lot less money than Danny DeVito would charge. I'd be happy to do it for free. You'd have to shave to do that. I'd love the attention. Well, but it was pro se. And, you know, pro se plaintiff isn't going to know he has to show a period of antagonism. There were all these grievances filed. There is this allegation that someone else said, you know why you were fired, et cetera, et cetera. Should we give him the obligation or the opportunity to replead? Was he given that opportunity? He was, in fact, given the opportunity to replead because this is an amended complaint. The first time his complaint was dismissed for inactivity, and he said, give me another chance. And the magistrate, Judge Pesto, said, okay. Maybe here we should let him have the opportunity. If there is a pattern, and he knows he has to allege a pattern, you know, I would think, though, you'd have to do it through grace and favor because he tried to bring up everything he could conceivably think of. But he said that a corrections officer admitted to him that his termination from the block worker position was in retaliation for filing grievances. Now, isn't that enough? If we have to accept it as true, why isn't that enough? It happened after the termination took place. Well, of course. It would have to. Because he wouldn't know it was going to happen. But it wasn't anything that had to do with the period after. Well, and you tested. Maybe the guy's just, maybe he's just guessing that that's right. But on the other hand, maybe there's real evidence there. He put it in the complaint. He did. We have the light most favorable to the plaintiff, per se. If, in fact, the count would be reinstated, it would only be for purposes of proceeding beyond the motion to dismiss. Because, of course, that particular piece of evidence is on its face inadmissible. Why is it inadmissible? Because Hunter isn't the defendant in the case. So I don't see how it would be an admission. He could lead to something. We just don't really know. We don't really know. You have to accept that it's true. I understand, Your Honor. And I would. But it's still a hearsay statement. I don't mean you personally. I understand. But I would suggest that there would have to be an exception under the hearsay rule for it to be admissible evidence. It's on its face patently inadmissible because Hunter isn't one of the defendants. So it's somebody third party said something to me that reflected on the actions of other people. You mean it's hearsay? Yes, without an exception. Well? And I would suggest that that fact alone on the face of the complaint. Plus, before today, they haven't specifically pointed to Hunter, although it is in the complaint. It isn't one of the arguments that's raised. It isn't one of the paragraphs that's raised in the reply brief as supporting their intervening period of antagonism. Clippinger's remarks, Sergeant Clippinger's remarks attempt to serve that purpose for them. Well, she has a lot of time. She talks so fast that she has a lot of time left. I appreciate the court's careful consideration of this case. Thank you very much. Thank you. More slowly. I will try my very best to go. I have the same problem. It's not easy to slow down once you get into gear. I apologize, Your Honor. I just want to hit on a few points here. And the first is the fact that Judge McHugh raised precisely one of the federal policies at issue here, which is, as the Supreme Court said in Jones v. Bach, the purpose of the exhaustion requirement is that these issues will be resolved in the administrative process before a lawsuit is ever filed. And if we're encouraging prison litigants to come to court just to save the timeliness of their claims, it will undermine that policy significantly. I also would say that the PLRA's exhaustion requirement is not too porous to qualify as a statutory prohibition. And this court in Zinchiaq found that a bankruptcy automatic stay constituted this sort of statutory prohibition that would give rise to tolling under 5535. And a bankruptcy stay has a number of different exceptions. I cite the provision in the reply brief. And despite the fact that there are exceptions to that stay, it still qualifies as a statutory prohibition for the claims. What about the 1983 action? Maybe you could address that. And we have obviously hit on the fact that it's supposed to be a complaint in the standard with which we have to interpret that. But that last allegation really is a slender reed to rest anything on, isn't it? I do think if it was just Sergeant Klippinger's statement and the fact that he was being rude to him, that may not be enough. However, I think, one, the fact that Sergeant Klippinger was directly speaking to the fact that other prison officials were scared of the plaintiff because he had filed a number of grievances, and Sergeant Klippinger was saying I'm different than these other prison officials because I'm not scared of the grievances. Indicates that the grievances were an issue. And then I would also point to Unit Manager Hunter's statement that the reason he was not able to hold a job was because of the grievances he had been filing. And I did point that out in his reply. They're so sensitive. I didn't think prison officials were so sensitive that they objected to filing grievances against them. Your Honor. It's a new era. It's a touchy-feely era. It may be that once there is discovery and on summary judgment, it's ultimately found that there's not enough to show causation here. But for purposes of a Rule 12b-6 motion and given the leniency that is shown to pro se litigants, I think that there is sufficient factual allegations here. And particularly with respect to Unit Manager Hunter's statement, yes, it is hearsay, but there are any number of hearsay exceptions. We just can't tell at this point whether or not it would be admissible or if it would lead to other admissible evidence. At least Pearson named the correctional officer who supposedly, he didn't say a correctional officer. He said the specific name. Yes. Yes, so he does identify a specific individual who he says gave him the explanation that there was a causation or a causal link between the fact of him not being able to hold a job. Which of the things that he alleges do you think makes the case? All I can find is the firing from his prison job. So there are three claims here, the first being the assault by Defendant Cott that occurred in February of 2007, and he alleges that Defendant Cott punched him in the arm without reason, and so that is the basis for the Eighth Amendment claim. And then the second is the termination from his job in the dietary department, and that is against Defendant Reams and Mulligan. And then the third is, as you mentioned, his termination as block worker. So the first two. What is a block worker? I mean, I've never been in prison either, so I can't tell you the answer to that, Your Honor. Okay. Yes. But those are the three claims that, after screening, the magistrate judge found were adequately alleged in the complaint. Thank you very much for your argument. I assume you have no other questions? Your time is almost up. If there's no other questions, I'm happy to sit down. I want to thank you, Pro Bono.  You did a wonderful job. Thank you. You also let whoever at the firm which is responsible for designating who's going to take the pro bono cases express our gratitude to them. You may also tell them that we thought you'd speak more to myself, but I think my colleague's great. You did a wonderful job. Thank you. Have you argued before before us? No, I have not. Have you argued at any pro bono? No, this is the first time. You never know. You did a great job. Thank you very much. I'll try and slow down next time. Okay. Well, hopefully we'll see you back again. And, Mr. Mercer, I want to thank you also. You did candor. Yeah, it's really refreshing. When attorneys come before us, and I used to be a federal prosecutor. I'm not a federal prosecutor per se, but I think it's particularly important for attorneys who represent the government to approach the job with a different perspective, and that is that you do have a different obligation, and your candor is so refreshing. And it's very much appreciated by all of us. And not only your candor, you're very, very good. So it's not easy to stand up and give this away because you didn't. You argued very solidly and very forcefully, but certainly within the propriety and limits of what your position qualifies and requires. So thank you very much for your approach. It's an honor. Well, I've seen you many times. I'm sure I'll see you again, and hopefully I'll see you in this column again. I'd love to have you back here. Thank you, Your Honor.